## MOGK v. KING.

### Opinion delivered May 6, 1918.

LANDLORD AND TENANT—CONSTRUCTION OF LEASE.—A lease of land pro-
vided that the tenants have "free use of the land that they take
the stumps off * * * for the year 1916," but requiring that rent be
paid for the land thereafter, *held* to limit free use of the land to
the year 1916, and that the tenants could not use the land free
of rent for 1917, they having removed stumps in the winter of
1916 and 1917.

Appeal from Clay Circuit Court, Eastern District;
*W. J. Driver,* Judge; affirmed.

*E. G. Ward,* for appellants.

1. The court erred in its instructions. The contract
was for five years and failed to mention any specific time
in which to remove the stumps to entitle appellants to
free rent for 1916. It was error to limit it to Jan. 1, 1917,
as the court did by its instructions. Appellants were en-
titled to the 1916 crop on all land stumped prior to the
customary time to begin the crop for 1917.

2. The contract was prepared by attorneys for ap-
pellees assisted by their agent. It should be construed
most strongly against appellees, if indefinite or un-
certain. 9 Cyc. 590 J.

3. In replevin the verdict must describe the prop-
erty with certainty. Cobbey on Replevin, § § 1063, 1066;
53 Ark. 411. The verdict here fails to designate any
specific amount of corn. 7 Mo. App. 66, 578.

4. The judgment must conform to the verdict. Kir-
by's Digest, § 6242. It cannot be broader than the verdict.
Cobbey on Replevin, § 1086; 22 Fla. 153. The amount of
the corn was not found—only the value of the judgment
is erroneous. Corn was $1.25 per bushel but only the di-
mensions of the crib were proven, not the number of
bushels.

5. Part of the land at least was "stumped" but no
allowance of rent was made for this.

*W. E. Spence,* for appellee.

1. The land was not stumped during the year 1916
as the contract provided. The court properly instructed

the jury, the evidence was conflicting and the verdict should not be disturbed on appeal. 73 Ark. 377; 75 *Id.* 111; 76 *Id.* 326. Under proper instructions the jury found that no part of the land had been stumped as provided for in the contract.

2. There is no error in the verdict or judgment. It was not necessary to fix the amount of the corn. It was described as 225 bushels and there was no issue as to the quantity. The verdict was sufficient, and the judgment proper. 25 Ark. 11; 29 *Id.* 372; 53 *Id.* 411, etc. No objection was made to the form of the verdict. 53 *Id.* 411.

### STATEMENT OF FACTS.

This is a suit in replevin by J. R. and Matilda King against Charley Mogk and M. G. Ort to recover possession of 225 bushels of corn alleged to be worth $225.00. On the 25th day of September, 1915, J. R. and Matilda King, by a written contract, leased to Charley Mogk and M. G. Ort, 80 acres of land in Clay County, Arkansas, for the term of five years, beginning the first day of January, 1916, and ending the first day of January, 1921. It was agreed that the rent should be one-fourth of all the corn grown on said premises the first year and one-third each year thereafter, one-fourth of the cotton and one-half of the hay. The corn was to be delivered in a crib on the premises, the cotton at the gin and the hay in a stack or barn. The clause of the lease which caused this law suit is as follows:

"It is agreed by and between the parties hereto that the parties of the second part shall not sub-rent or lease any part of said premises without the written consent of the parties of the first part, and it is further agreed between the parties that the parties of the second part are to have the free use of the land that they take the stumps off level with or below the surface of the land for the year 1916, but are to pay rent as herein specified thereafter."

During the year 1916, the tenants made a corn crop on about 38½ acres of the land. They gathered one load of corn of about 25 bushels and put it on another farm of

the landlord's about two miles away. The remainder of the rent corn was placed in a crib on the place where it was grown. The tenants both pointed out the pen in which the corn was cribbed to an agent of the landlord and stated it was the rent corn.

According to the testimony of I. W. Harlan, the agent, he accepted the corn in the crib as rent on or about the 31st day of December, 1916. He never attempted to remove any of it until the 14th day of February, 1917. The defendants then forbade him to remove the corn and informed him that the plaintiffs had all the rent that they were entitled to for that year.

According to the testimony of Harlan, he made and signed the contract for the owners. He was the agent to look after the farm. He stated that none of the ground was stumped in 1916. The defendants claimed the right to remove the stumps at any time during the term of the lease. Harlan denied them this right under the contract. He told them that they had no right to remove the stumps under the contract after the first of the year 1917, but that he would advise them to remove them for their own benefit after that time.

On the other hand the defendants testified that they had pulled the stumps off of about twenty-three acres of the land and that the corn in controversy grew on this part of the farm. They denied that they pointed out a crib on the farm and told Harlan that it contained the rent corn; that they finished burning the stumps in February, 1917; that most of the stumps were pulled off of the land during the year 1916. Other witnesses corroborated their testimony and said that between 20 and 25 acres had been stumped. Other testimony will be stated or referred to in the opinion.

The court directed a verdict in favor of the plaintiffs and fixed the value of the corn to which the plaintiffs were entitled in the sum of $200.00. The court thereupon rendered judgment in favor of the plaintiffs against the defendants for the 225 bushels of corn sued for, or in the

event that it was not delivered to the plaintiffs that they should recover of the defendants the sum of $200.00.

The defendants have appealed.

HART, J., (after stating the facts). We have copied in the statement of facts that part of the lease in regard to taking the stumps off of the land. It is the contention of the plaintiffs that under the terms of the lease that the defendants were only to have rent-free the land from which they took the stumps off level with or below the surface of the earth during the year 1916. On the other hand it is the contention of the defendants that they could take the stumps off at any time during the term of· the lease. They insist that the lease failed to mention any specific time in which to remove the stumps. The court in its instructions to the jury limited the time to January 1, 1917. This action of the court is assigned as error.

We think the construction put upon the contract by the court was correct. Such construction seems to be borne out by the language of the lease contract. It provides that the tenants are to have the free use of all the land that they take the stumps off of level with or below the surface of the land for the year 1916, but are to pay rent thereafter. The year 1916 was the first year of the lease and it seems to have been the intention of the parties to require the stumps to be removed or cut off during that year. This is shown by the fact that the tenants are to pay rent thereafter. It is not reasonable that it was the intention that the tenants should have the land rent free for 1916, and have the balance of the term within which to remove the stumps. It was the manifest intention that they should only have rent free the land from which they took the stumps. If they did not remove the stumps during the year 1916, it could not be known how much of the land they were to have rent free. On the other hand the rent was not due until the end of the year and if the stumps were removed during that year, at the end of the year it would be known exactly how much of the land was to be free from rent.

There was a sharp conflict in the testimony between the plaintiffs and defendants as to how many acres of the land had been cleared of stumps during the year 1916; but this question was submitted to the jury under the principles of law above announced. The jury returned the following verdict:

"We, the jury, find for the plaintiff and fix the value of the corn to which plaintiffs are entitled in the sum of $200."

The court rendered judgment upon the verdict in the alternative. It adjudged that plaintiffs have and recover of the defendants the 225 bushels of corn sued for, or in the event that same is not delivered to plaintiffs that they recover of the defendants the sum of $200.

It is insisted that this was error because the verdict of the jury might have been based upon a less number of bushels than 225, the amount sued for. Appellants did not make this a ground of their motion for a new trial and under our rules of practice can not raise that issue on appeal.

Morcover there was no dispute between the parties as to the number of bushels of corn in the crib and we think the form of the verdict indicates that the jury found for the plaintiffs for the amount of corn sued for and fixed its value at $200.

Therefore, the judgment will be affirmed.